Cesidio Leone et als.
vs.                    No. 59427
Fred M. Swartz

March 20, 1928

BAKER, J.   Jury trial waived.

This case was heard with Law No. 67574, in which the parties herein are reversed. In the case at bar the plaintiffs, general contractors, are suing to recover what they claim is the balance due on a certain contract, together with extras, growing out of the construction of an apartment house for the defendant in the City of Providence. A view of the premises was taken by the Court during the trial.

The facts show that the plaintiffs had done construction work for the defendant prior to the particular contract now before the Court and also did work for him following the termination of said contract.

This contract in question was in writing and was entered into May 29, 1923. It was necessary that work be started at once by reason of certain impending changes in the zoning ordinances of the City of Providence, and apparently work was begun immediately.

The first difficulty is as to the proper meaning and construction to be given the contract. It appears that a certain apartment house, known as the Kane house, was being built on Elton Street in the City of Providence, and the defendant desired the plaintiffs to build him a house similar to that one. At the time the contract was entered into, the Kane house was not entirely finished. The contract into which the parties entered provided that the plaintiffs agree to erect an apartment house for the defendant which should be a duplicate of the said apartment house on Elton Street insofar as material, labor, design, stock and workmanship are concerned. To further complicate the situation, there were certain plans and specifications prepared by an architect for still another apartment house, which were on occasions used by the parties. These plans and specifications were not consistent with each other and differed very materially from the Kane house as actually built.

The defendant herein contends that the proper meaning of the contract now before the Court was that the plaintiffs were to duplicate the Kane house as it stood on May 29, 1923, when the contract was entered into, and thereafter the plans and specifications were to be followed.

The plaintiffs, on the other hand, urge that the intention of the parties was that they were to build for the defendant the kind of a house that Kane and his contractor had agreed upon between themselves before the construction was begun and that the defendant's house was to be built with material and in a manner reasonably similar to that employed in the Kane house. The situation as regards the contract in the case at bar was left in such confusion by the parties, taking into consideration the circumstances as they then existed and the plans and specifications employed, that the Court has serious doubt whether the parties themselves knew exactly what they meant.

After considering the matter carefully, the Court has come to the conclusion that a reasonable construction to be placed upon the contract in this case is as follows: that the parties intended the plaintiffs to substantially duplicate the Kane house as it stood on May 29, 1923, at the time the contract was signed, they having visited said house for the purpose of figuring on the contract; that as to further work, the plans and specifications were not to be followed in their entirety but that the plaintiffs were to continue to duplicate the Kane house in its finish insofar as would be reasonable for an apartment house of that type, but that if any extras or unusual require-

ments were called for in the Kane house, then the defendant, if he desired them in his house, should be called upon to pay extra for them. The Court feels that it is somewhat substantiated in its position by the action of the parties themselves, because in many details occurring subsequent to May 29, 1923, the plaintiffs obviously followed the Kane house rather than the plans and specifications.

The contract in question was for $28,000. The plaintiffs claim a balance due on the contract of about $1500, together with a substantial sum for extras. The defendant admits that there may be a small balance due on the contract and on two extras which were agreed to in writing but defends against the other extras.

There seems to be little or no dispute but that the defendant paid the plaintiffs for labor and other work the sum of $10,650. The arrangement was that the defendant should pay the bills for the material going into the house and the bills of some of the sub-contractors. He presented in evidence as exhibits a number of receipts and checks showing these payments. While on the evidence there is some slight difference in the figures as to what this total amounted to, on the whole the parties are not much at variance.

After a careful consideration of the evidence and the exhibits on this point, the Court finds that the defendant made to the material men and sub-contractors total payments amounting to $16,536.25. This sum includes a payment of $250 for electrical work, which sum the defendant omitted in his first statement. The total of these two figures, namely, the amount paid the material, men and the sub-contractors and the amount paid the plaintiffs, is $27,186.25.

The defendant further claims that he is entitled to an allowance of $550 on the oil burner. On the other hand, the plaintiffs claim that they are entitled to this sum as an extra. The Court believes that the defendant's claim on this point is correct. The testimony shows that he and not the plaintiffs paid for and put in the oil burner. Further, Exhibit B, while perhaps it can not operate as a contract between the parties because it is not signed by all the plaintiffs, nevertheless, in the judgment of the Court, can be considered as evidence relating to the intention of the parties in regard to the oil burner, concerning which there was more or less argument from the beginning. It appears to the Court that the parties practically agreed to meet half way in regard to the matter of the oil burner and therefore, in view of the fact that the plaintiffs did not pay for and install it and apparently did receive some credit from the sub-contractor in connection therewith, that the defendant is entitled to an allowance of $550 on this item.

This amount added to the total sum paid by the defendant would bring the figure to $27,736.25. In addition, the defendant also claims that on September 15, 1923, he paid $150 for a certain extra ordered by him. He has no receipt for this, although he evidently was in the habit of taking receipts for payments he made. Neither does this sum of $150 appear on any account of the parties. (See Exhibit 5 and Exhibit A.) Further, he did make another payment to the plaintiffs at just about that same time for which he took a receipt. It seems to the Court that he has not sustained the burden sufficiently of proving that he made this cash payment, and the Court will not allow him for this sum. He also claims he is entitled to be allowed the sum of $139.33 for interest. The Court does not feel that it should give him this credit. This apparently is for interest on sums paid the plaintiffs ahead of the time when they were due and, in the judgment of the Court, the defendant having acted voluntarily can

not now ask for interest on such payments. Further, it appears from the testimony that in making payments to the sub-contractors and material men, in certain instances interest was figured. This appears clearly in the testimony and also on Exhibit A and Exhibit 5. These sums appear to be as follows:

$ 25.00 Dean Plumbing Company,
  7.50 Crooker Company,
100.75 F. D. McKendall,
 19.88 on another bill of McKendall,
 61.27 Burrows & Kenyon.

These sums altogether amount to $214.40.

The Court feels that this amount should not be charged to the plaintiffs and should be deducted from the total amount with which the defendant is credited. It appears that in some instances the defendant in paying the material men gave short time notes upon which he had to pay interest or had allowed the bill to run for some time, thereby causing interest to be figured. In view of the fact that the arrangement was that the defendant was to make these payments, in the opinion of the Court he should not be allowed to increase them by letting them stand and paying them at his own convenience. Deducting this sum for interest from the last total credited to defendant leaves the amount for which the defendant should be allowed as $27,521.85.

It appears clearly, without dispute, that the agreed extras are $469.33. Deducting, therefore, the total amount allowed the defendant as payments from $28,469.33, leaves a balance due on the contract and on the agreed extras of $947.48.

The plaintiffs claim a substantial amount for other extras, some of which the Court thinks should be allowed and others disallowed. It seems to the Court fairly clear that some of these extras are more or less of an afterthought and have been injected into the matter after the case was brought. They do not appear in any way on Exhibit A, a statement of the plaintiffs. This is explained by them by saying that this statement was merely a statement of the moneys paid them and the material men and the agreed extras, without including any of the matters in dispute, and was given in order to check them with the defendant's figures. However, certain of the extras seem to the Court, under all the circumstances, fair and reasonable. The Court will allow an item of $65 for brick in the foundation instead of cement block. There is some dispute as to how this change happened to be made, but the fact remains that it was made; that at the time it was made there was no objection by the defendant or his agent, Mr. Lockwood, and on the whole this, to the Court, seems a fair charge. The front steps were changed from cement to brick for which a charge of $75 was made by the plaintiffs. While this work was not well done, the Court believes that it was in the nature of an extra and the plaintiffs are entitled to charge therefor. In the inside finish of the house, the defendant desired a type of door known as The Miracle door. This was more expensive than the regular door and the Court feels that the plaintiffs are justified in making a charge of $122.50 for this item. It also appears that in the sewer connection iron pipe was used instead of clay. The defendant claims that the plaintiffs should have known this and that the Providence ordinances required it, but the Court, after considering the matter, thinks the charge of $125 for this item is reasonable. At the defendant's request certain of the inside finish was of gum wood. It appears from the testimony that this wood is somewhat harder to work than ordinary pine, that it has to be handled more carefully and scratches and mars more easily, and the Court will allow the

plaintiffs their extra charge of $75 for labor in putting in this type of finish. The plaintiffs are also claiming the sum of $300 for lavatories in the basement. It appears from the testimony that on May 29, 1923, when the contract was signed, in the Kane house there were stacks or connections for lavatories in the basement although they were not called for in the plans and specifications. The evidence also tends to show that Mr. Kane paid extra for these to his contractor. The Court believes that, on the whole, the plaintiffs are entitled to this sum of $300. The lavatories were not actually in the Kane house when the contract was signed and it might well be argued that the connections were merely there for future use. Further, there is in the case some testimony tending to show that at times the defendant made a statement that if Mr. Kane paid extra, he would pay extra. It is true that he denied making this statement, but the Court is inclined to believe that there was some talk of that kind.

The sum total of these extras above referred to amounts to $762.50. This sum together with the $947.48 due on the contract and agreed extras is $1709.98, which the Court finds is due from the defendants to the plaintiffs.

The plaintiffs claim certain other extras which the Court does not believe they are entitled to. The Court will refer to the item for $100 in connection with certain work on Blackstone Street. For this the defendant has a release. See Exhibit E. Moreover, it is not included in this contract. As to the claim of extra for tiling in the bath rooms, it appears to the Court that on May 29, 1923, it was perfectly obvious that in the Kane house tiling was to be placed on the bath room walls. From the testimony the plaster was left in such a condition that this was readily apparent. Further, the plaintiffs appear to be making this claim on the mistaken idea that Mr.

Kane's contractor received an extra payment for this. In the judgment of the Court the testimony does not bear out this contention. If any extra payment was made for tiling in the Kane house, it was made for the tiling in the vestibule and not in the bath rooms. The Court believes that the plaintiffs are not justified in making any claim for telephones. In the Kane house on May 29, 1923, the wiring for the telephones was apparent and, further, it is a common thing for apartment houses of this kind to have telephones in the vestibule. As to the claim of extra for press closets upstairs, the great weight of the testimony shows that on May 29, 1923, these press closets were all built into the Kane house and were plastered, and in plain view for anyone to see. Under the construction given by the Court to this contract, it would not seem as though the plaintiffs should be allowed to charge for this item. The same state of affairs applies to the casement windows, in the judgment of the Court. The frames were in which showed clearly the type of window to be used. The Court also feels that the plaintiffs are not entitled to charge anything for moulding in the dining rooms.

There remains only the claim of $900 for brick veneer on the outside of the house. The plaintiffs claim that this is an extra and that the plans and specifications show that stucco was to be used. The Court does not feel that the plaintiffs should be made this allowance. In the first place, it is of the opinion that on May 29, 1923, when the contract was signed, practically all the brick work on the Kane house was done and in plain view. Secondly, the testimony relating to what took place in the office of the Inspector of Buildings in the City Hall in Providence and the testimony relating to the erasure on the plans and specifications lead the Court to feel that the plain-

tiffs knew, or should have known that the outside of the house was to be brick veneer and not stucco.

There was a request for certain special findings. These will be considered in the rescript filed in Law No. 67,574.

Decision for the plaintiffs for $1709.98.

For plaintiffs: Louis V. Jackvony.
For defendant: Frank H. Bellin.